# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CATHY HOUSER,** | } |
| **Plaintiff,** | } |
| v. | } Civil Action No. 2:08-CV-1580-RDP |
| **MICHAEL J. ASTRUE,** | } |
| **Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Cathy Houser brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, Disability Income Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits under Title II and Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

**I.      Procedural History**

Plaintiff filed her applications for a period of disability, DIB, and SSI on June 6, 2005.[1] Plaintiff's applications were denied initially and also upon review. (Tr. 32-36). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 26, 2005. (Tr. 29).

---

[1] The ALJ's decision states Plaintiff filed a Title XVI application for SSI on May 5, 2005. (Tr. 13). The record is void of any documentation related to the filing of this application.

Plaintiff's request was granted and a hearing was conducted on April 5, 2007 before ALJ Jerry M. Lang. (Tr. 20, 25, 274-303).

On May 7, 2007, the ALJ issued a decision denying Plaintiff's applications for disability, DIB, and SSI. The ALJ determined that Plaintiff suffers from severe impairments of hypertension, anxiety and depression, but she does not have an impairment that meets or medically equals the criteria of any impairment included in the Listings of Impairments. It was the ALJ's finding that Plaintiff retains the residual functional capacity ("RFC") to perform a sedentary level of physical exertion with the following limitations: no more than casual contact with the general public; no more than simple 1-2 step work instructions; and no more than 2 hours of concentrated work without a break. (*See* Tr. 13-19).

On June 4, 2007, Plaintiff requested a review of the ALJ's decision. (Tr. 9). The Appeals Council denied Plaintiff's request for review on July 1, 2008, thereby making the ALJ's decision the final decision of the Commissioner and, therefore, a proper subject for this court's review. (Tr. 3-6, 9).

Plaintiff was born on June 19, 1962 and was 42 years old on the alleged onset date of disability, which is defined as a younger individual age 18-44. 20 CFR 404.1563 and 416.963. (Tr. 18). Plaintiff graduated from Prattville High School and obtained an Associate Degree from a business college. (Tr. 199). Plaintiff also completed several courses at Jefferson State Community College in order to earn her P&C insurance license. (*Id*.). Plaintiff has past work experience in a factory as a laborer, in retail sales, and in the insurance business. (Tr. 56). The ALJ determined that Plaintiff has acquired sufficient quarters of coverage to remain insured through December 31, 2008. (Tr. 13).

Plaintiff alleges disability beginning March 15, 2005, due to hypertension and major depressive disorder. (Tr. 27). Plaintiff testified that she was continually experiencing health issues in the six month period leading up to her resignation from her last job. Plaintiff testified that because she was missing work more than she was there, she decided to quit because she didn't want to get fired. (Tr. 281-83). When the ALJ asked why she was missing work, Plaintiff responded that her blood pressure was too high and her potassium level was too low. (Tr. 282). Plaintiff further testified that she has been unable to return to work because her doctor, Dr. Barnes, told her that her heart was enlarged. Because of this, Plaintiff states she experiences shortness of breath requiring her to use an inhaler and Vicks Vapor Rub all day long. Additionally, Plaintiff testified that she suffers from anxiety, and becomes fearful for no apparent reason. (Tr. 283-84). (*Id.*).

Plaintiff was seen by Dr. Robert Cain in June 2002 after she had passed out at work. (Tr. 88). Plaintiff also reported to Dr. Cain that she had passed out a second time. (*Id.*). She informed Dr. Cain that she was treated at the HealthSouth ER after passing out the first time, but did not go back to the emergency room the second time. A physical examination of Plaintiff was found to be normal; CT scans and EEG results were both negative. (Tr. 100-101). Plaintiff was diagnosed with migraine headaches and hypertension.

Plaintiff presented to Dr. Cain on March 25, 2004 complaining of a left-sided migraine, as well as complaints of elevated blood pressure. Plaintiff stated she had been experiencing chest pain and shortness of breath, but at the time was not experiencing either. (Tr. 83). Plaintiff was diagnosed with hypertension and headaches. She was given samples of Atacand and instructed to return in a week for a follow-up. Plaintiff returned to see Dr. Cain on April 1,

2004 and had no complaints with regard to chest pain or shortness of breath. (Tr. 79). Plaintiff was instructed to stay on her current medication of Atacand. (Tr. 79).

On September 9, 2004, Plaintiff was transported by ambulance to the emergency room with complaints of left sided weakness. (Tr. 125). It was noted at the time that Plaintiff also complained of a headache on the left side. Plaintiff stated that she had been under quite a bit of pressure from her job and also in a new marriage. (*Id.*). Plaintiff was admitted into the hospital for further evaluation. (Tr. 134). No significant carotid stenosis was noted, with normal antegrade flow in both vertebral arteries. (Tr. 151). A head CT and EKG were normal, and MRI images showed negative results. (Tr. 82, 150). Plaintiff was diagnosed with left-sided weakness predominately in the upper extremity; headaches, history of migraines; hypokalemia; hypertension; systolic murmur; and depression. Plaintiff was to be seen by neurology and also have a consult with psychiatry for depression. (Tr. 126).

While in the ER, at the time of her initial medical evaluation it was noted that Plaintiff exhibited significant depressive symptoms and a psychiatric consultation was requested. (Tr. 135). Plaintiff was seen and evaluated by Dr. Jerry Howell. Dr. Howell noted that Plaintiff stated she has multiple psychosocial issues in her life. (Tr. 136). Plaintiff further stated that with regard to her anxiety, it is primarily generalized anxiety in that she stays tense and keyed up all the time and that she worries about any and everything. (*Id.*). Dr. Howell diagnosed Plaintiff with: Axis I - major depression, chronic recurrent without psychotic features, and anxiety disorder not otherwise specified with primary generalized anxiety disorder symptoms; Axis II - Deferred. (Tr. 137). Plaintiff was prescribed Lexapro and informed about nonchemical ways to

deal with her depression and how to improve her coping skills.  Plaintiff was encouraged to seek outpatient psychotherapy following her discharge from the hospital.  (*Id.*).

Plaintiff was taken by ambulance to the emergency room on February 17, 2005 with a nosebleed and high blood pressure. (Tr. 107).  Once at the hospital, Plaintiff stated she was feeling much better.  The ER doctor told Plaintiff he would order a head CT, but she stated she was much better and declined further evaluation. (Tr. 108-09).

Plaintiff was treated in the emergency room on March 22, 2005 for chest pains and numbness all over.  (Tr. 162-65).  Test results showed no acute disease; heart size normal; and lungs clear. (Tr. 166).  A CT brain scan was negative and a chest x-ray was normal.

At the request of the Social Security Administration, on August 31, 2005, Dr. Sally Gordon, Psy.D., completed a Psychological Evaluation Report on Plaintiff.  (Tr. 198-201). Plaintiff reported debilitating depression at that time, as well as sadness, frequent unprovoked crying, anhedonia, anergia, low motivation, fatigue, irritability, social withdrawal, and low self-esteem.  Plaintiff further stated she worries about "everything" but has had only one panic attack, which occurred while she was "stuck in a crowd."  Since then she has avoided large groups of people, even going so far as to join a church with a smaller congregation than her last church. (Tr. 198).  Plaintiff made mention that she "sleeps all the time – constantly" because "it is the only outlet" she has, yet at times she can go two or three days without sleep. (Tr. 199).  Plaintiff explained her daily activities as typically getting up by 7:00 a.m., tending to her personal hygiene, dressing, eating breakfast, and taking her medications.  She intersperses housework with rest periods, during which she often dozes.  She goes to bed at 11:00 p.m.  She is able to perform all aspects of household chores, laundry, cooking, and caring for a puppy someone gave

her. She manages her finances and medications, and drives. She talks on the phone to her sister and "an old neighbor," visits with a close girlfriend, and goes to church once a week. In the past, however, she had gone to church tree times a week, had been active with the Eastern Start group and volunteer work at her church. (Tr. 200). Dr. Gordon's diagnostic impression is as follows: Axis I - by history, major depressive disorder, recurrent, moderate, without psychotic features; by history, anxiety disorder NOS; Axis II - obsessive-compulsive personality disorder; Axis III - HTN, visual disturbances, chronic migraine headache, left-sided weakness, heart murmur; Axis IV - martial difficulties with separation, son stationed in Iraq; and Axis V - a GAF score of 50. (*Id.*).

Plaintiff was treated at the emergency room on January 16, 2006 for acute chest pains. (Tr. 242). She was released in stable condition with a diagnosis of uncontrolled hypertension. (Tr. 247). Plaintiff was treated on May 16, 2006 for chest pains. An echocardiogram showed normal heart function with an ejection fraction of 55% in both the left and right ventricular. (Tr. 266).

Repeated examinations, CT scans of the brain, echocardiograms, and x-rays performed on Plaintiff have shown no evidence to support Plaintiff's allegations of pain. Plaintiff does not see a doctor on a regular basis, has not had any surgery, nor has any been recommended. No treating or consulting source has indicated that Plaintiff is incapable of functioning independently or incapable of performing at least some type of work at a sedentary level of physical exertion with only minor physical and mental restrictions.

**II.     ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq*. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairments meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." (*Id*.).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged March 15, 2005 onset date of disability. (Tr. 15). The ALJ determined that Plaintiff has a severe combination of impairments of hypertension, anxiety and depression, although he found that her impairments, considered either alone or in combination, fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*). According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (Tr. 16). After careful consideration of the entire record, the ALJ found that Plaintiff has the RFC to perform a sedentary level of physical exertion with the following limitations: no more than casual contact with the general public; no more than simple 1-2 step work instructions; and no more than 2 hours of concentrated work without a break. (*Id.*). The ALJ also determined that Plaintiff could not perform her past relevant work. (Tr. 18).

Plaintiff was 42 years old on the alleged disability onset date, which is defined as a younger individual age 18-44. She has at least a high school education and is able to communicate in English. Transferability of job skills is not material to the determination of disability here because use of the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 18).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period for Plaintiff to file objections, reversed, or in the alternative, remanded for further consideration. (Doc. #10, at 8). Plaintiff asserts that the ALJ (1) failed to accord proper weight to the opinion of the SSA's impartial psychological examiner, and (2) failed to properly consider Plaintiff's migraine headaches as a 'severe' impairment.

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F. 2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings

must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.     **Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

    A.    **The ALJ Properly Evaluated the Opinion of Dr. Sally Gordon, and the Mental Limitations Determined by the ALJ are Supported by Substantial Evidence.**

Plaintiff argues that the ALJ failed to address the opinion of Dr. Gordon, a one-time mental health examiner who examined Plaintiff on August 31, 2005, and that he also failed to state the weight he gave to Dr. Gordon's opinion. (Tr. 201). Plaintiff argues that based on Dr. Gordon's opinion, Plaintiff should have been found disabled based on her functional limitations related to her depression and anxiety. (Doc. #10, at 5-6). Plaintiff asserts that failure to properly state the weight given to the opinion of Dr. Gordon or the vocational expert's testimony based upon it, the ALJ's decision cannot be based on substantial evidence and his decision is due to be reversed and benefits awarded. (*Id.*).

To the extent that Plaintiff is arguing that the ALJ erred in his evaluation of Dr. Gordon's opinion, that argument lacks merit. Contrary to Plaintiff's contention that Dr. Gordon's opinion supports a finding of disability, this court agrees with the ALJ that it does not. Dr. Gordon opined that Plaintiff's "issues and her typical functioning suggest that she would have moderate

difficulties managing employment at this time." (Tr. 201). A "moderate difficulty" to manage employment is not synonymous with an inability to work. Therefore, Dr. Gordon's opinion does not support a finding that Plaintiff is disabled.

Plaintiff's argument also incorrectly assumes that Dr. Gordon's opinion is inconsistent with the hypothetical question the ALJ posed to the vocational expert ("VE"). For example, Dr. Gordon opined that Plaintiff's depression "is likely to interfere with her ability to learn, remember, and follow through on work assignments," and that she is "likely to respond to work pressures with inadequate coping strategies and display more prominent symptoms of psychiatric distress" (*Id.*). While this may suggest some limitation in her ability to perform mental work-related activities, Dr. Gordon never indicated that any such activities were precluded. The ALJ properly considered Dr. Gordon's opinion and asked the VE to consider if Plaintiff could perform work so long as: (1) the work was limited to simple one-two step instructions; (2) the changes in the work setting were gradually introduced; and (3) the work did not require more than two hours of concentration without a break. (Tr. 296-97). Dr. Gordon indicated that Plaintiff is able to get along with people under optimal conditions, but "is likely easily overwhelmed and become [sic] irritable and withdrawn." (Tr. 201). Therefore, it was reasonable for the ALJ to ask the VE to consider as part of the hypothetical that a claimant has only casual contact with supervisors, general public, and coworkers. (Tr. 296).

Although the ALJ did not adopt Dr. Gordon's precise limitations, he was not required to do so because he was not bound by the mental health examiner's conclusions. One time examiners are not entitled to controlling weight or substantial deference. *See* 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); *Crawford*, 363 F.3d at 1160. Furthermore, there is no authority

requiring an ALJ's RFC finding to be identical to such an opinion because the regulations are specific–an ALJ's RFC assessment is to be based on all relevant evidence in the case record. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(3), 416.920(e), 416.945(a)(3). Because Dr. Gordon was not a treating source, the ALJ was under no legal obligation to adopt her conclusions verbatim. Rather, the ALJ was simply required to evaluate this opinion with the rest of the evidence.

Plaintiff bears the burden of proving that she is disabled, and consequently, she was responsible for producing evidence in support of her claim. *See Ellison*, 355 F.3d at 1276; *see also Bowen v Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the [plaintiff], who is in a better position to provide information about [her] own medical condition, to do so."). Here, Plaintiff has failed to establish that the mental limitations determined by the ALJ were not supported by substantial evidence or that Dr. Gordon's opinion would require additional mental limitations beyond those determined by the ALJ. This court also finds that Plaintiff has not cited to any evidence in support of her claim. Despite any form of evidence supportive of the opposite conclusion, the ALJ's findings are still supported by substantial evidence. *See Crawford*, 363 F.3d at 1159.

Plaintiff also argues that the ALJ erred because he did not properly state the weight accorded to Dr. Gordon's opinion. (Doc. 10, at 5). An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). However, an ALJ's failure to specify the weight accorded to a particular physician is harmless error when a correct application would not contradict the Commissioner's ultimate findings. *See Caldwell*, 261 F. App'x at 190; *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *cf.*

*Crawford,* 363 F.3d at 1160 (the Eleventh Circuit upheld an ALJ's "implicit rejection" of a one-time mental health examiner). The ALJ discussed Dr. Gordon's opinion at length in his decision. (Tr. 17). Although the ALJ did not specifically state the weight he accorded Dr. Gordon's opinion, the ALJ's failure to assign weight to Dr. Gordon's opinion is harmless error because the application of Dr. Gordon's opinion would not have changed the result. *See Caldwell*, 261 F. App'x at 190. Plaintiff's limitations as determined by the ALJ are consistent with the opinion of Dr. Gordon, and nothing in Dr. Gordon's report undermines the ALJ's findings.

**B.     Plaintiff Failed to Meet Her Burden of Establishing That Her Headaches Were a Separate Severe Impairment.**

A great majority of Plaintiff's treating records refer to her migraines and the reported limiting effects of those headaches on her life and daily activities. Plaintiff contends that the ALJ did not consider her headaches to be a separate and severe impairment. (Doc. #10, at 6-7). Plaintiff's argument lacks merit because she failed to carry her burden of establishing that her headaches amount to a severe impairment, *i.e.*, that her headaches significantly limit her ability to perform work-related activities.

The ALJ expressly discussed the evidence related to Plaintiff's hypertension and headaches, but identified only hypertension as a severe impairment. (Tr. 16). The ALJ stated in his decision that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible. (*Id.*). Plaintiff has not cited any medical evidence that establishes that her headaches, apart from hypertension, significantly affected her ability to perform work-related activities. Rather, she simply asserts that the ALJ was required to fully and fairly develop the record and that he did not do so as to this issue at the second step of the

sequential evaluation process. (Doc. # 10, at 6). This argument lacks merit because it disregards the simple and straight forward proposition that it is Plaintiff's responsibility to prove her disability. To be sure, although an ALJ has the basic duty to develop a full and fair record, the claimant is still required to provide detailed medical evidence establishing her disability. *See Ellison*, 355 F.3d at 1276.

At the administrative hearing held in April 2007, Plaintiff's attorney provided her with representation and submitted medical records on her behalf, none of which related to Plaintiff's headaches. (Tr. 238-69). Failure to submit this medical evidence does not extinguish Plaintiff's burden of establishing her disability. Furthermore, Plaintiff cannot fall back on the argument that the ALJ failed to develop the record as a way of avoiding her burden of establishing a severe impairment.

For Plaintiff to show that an impairment is severe, she must establish more than a diagnosis. The point is as tautological as it is true–the mere diagnosis of an impairment does not establish its severity.[2] This court finds that while substantial evidence shows Plaintiff did in fact suffer from frequent headaches, she has failed to show they amounted to a separate and severe impairment.

## VI. Conclusion

For the reasons state above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were

---

[2]The court recognizes that an impairment is severe if it significantly affects a claimant's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a). Generally, an impairment is not severe if "it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with h[er] ability to work, irrespective of age, education, or work experience." *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987) (Doc. #11, at 13-15).

applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

    **DONE** and **ORDERED** this   29th   day of September, 2009.

_____
    **R. DAVID PROCTOR**
    UNITED STATES DISTRICT JUDGE